FILED
 2014 Sep-12 PM 03:34
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JIANJUN FU and HONWEI QIN** ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> **WELLS FARGO HOME** ) <br> **MORTGAGE,** ) <br> ) <br> Defendant. ) <br> ) | Civil Action Number <br> **2:13-cv-01271-AKK** |

## **MEMORANDUM OPINION**

Hongwei Qin and Jianjun Fu pursue this case against Wells Fargo, N.A., alleging that Wells Fargo is vicariously liable for the negligence of one of its employees who sent Qin and Fu an unsecure email containing their confidential information. Qin and Fu contend the employee's actions led to the theft of Qin's identity and subjected them to an increased risk of identity theft. Doc. 16 at 5, 7. Qin and Fu also claim that sending the unsecured email breached a contract between Qin and Fu and Wells Fargo. *Id*. at 19–21. The parties have filed cross motions for summary judgment on the negligence claims, and Wells Fargo moves for summary judgment on the breach of contract claim as well. Docs. 25, 30. The motions are fully briefed and ripe for review. *See* docs. 26, 27, 30, 32, 37, 38, 39,

40. Based on a review of the evidence and the law, the court finds that Qin and Fu present insufficient evidence of causation and lack standing to pursue their negligence claims, fail to establish the existence of a contract, and fail to prove actual damages. Therefore, Qin and Fu's motion for summary judgment is due to be denied and Wells Fargo's motion is due to be granted.

## I.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear a burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL AND PROCEDURAL BACKGROUND

In August 2010, Qin submitted an online inquiry to Wells Fargo regarding the refinance of a loan on one of Qin and Fu's rental properties. Doc. 27-1 at 5.

After exchanging several phone calls with Ken Jacobson, a mortgage loan originator for Wells Fargo, Qin and Fu decided to use Wells Fargo for the refinancing. *Id.* Jacobson then sent an unsecured, unencrypted email to Qin's work email account with the loan application attached. Doc. 32-1 at 2–7. Qin forwarded the email to Fu, who, after reviewing it, realized the attached application included both his and Qin's social security numbers, birth dates, and employment information. Doc. 27-1 at 6. The email also contained the following disclaimer: "This is an unsecured email service which is not intended for sending confidential or sensitive information. Please do not include your social security number, account number, or any other personal or financial information in the content of the email." Doc. 27-7 at 42. Fu subsequently sent an email, which Qin edited, to Jacobson complaining that Jacobson included their confidential information in an unencrypted, unsecured email. Doc. 27-1 at 6. Jacobson responded with an email that mainly discussed the progress of Qin and Fu's loan, and only acknowledged the unsecured email by stating: "I also appreciate your comments with regard to emailing the loan documents." Doc. 27-7 at 40. Jacobson copied his manager, Steve Gatermann, who never contacted Qin and Fu. Doc. 32-1 at 9.

Beginning in December 2012, Qin realized that an unknown person or persons had used her identity to conduct a series of fraudulent financial transactions. Doc. 27-1 at 7. Qin and Fu first learned about these transactions

when Discover Card contacted Qin about a fraudulently opened account and BBVA Compass Bank denied her application for a credit card. *Id.* Then, after Qin received a copy of her credit report, Qin and Fu found that someone had opened several fraudulent accounts in Qin's name. *Id.* at 8. Eventually, Qin and Fu learned that someone had used Qin's identity to 1) open a credit card with Discover; 2) establish telephone service with AT&T and incur a balance of $1,539; 3) open a credit card with Bank of America and incur a balance of $36,539; 4) open a credit card with Nordstrom FSB and use it to make a $269 purchase; 5) open a PayPal MasterCard and incur a balance of $471; and 6) open a MBNA credit card with the clothing store Cache and incur a balance of $10,994. Doc. 32-3 at 1–21. To remove these accounts from Qin's credit reports, Qin and Fu spent many hours on the phone with creditors and collections agencies and subscribed Qin to Life Lock credit monitoring service. Doc. 31 at 6. Ultimately, Qin was not held liable for any of the charges. *Id.* at 7.

### III.   ANALYSIS

Qin and Fu allege claims for (1) negligence and wantonness (that Wells Fargo negligently or wantonly increased the risk of identity theft, doc. 16 at 7–15, and caused the theft and misuse of Qin's identity, *id.* at 15–19) and (2) breach of contract (that Wells Fargo breached express and implied contracts dictating that it not expose Qin and Fu's confidential information to theft, *id.* at 19–22). The court

will consider each claim in turn.

### A.  Negligence and Wantonness

Qin and Fu allege that Wells Fargo wantonly or negligently caused an increased risk of identity theft (Count I), and the theft and misuse of Qin's identity (Count II). Doc. 16 at 7-15. To recover on a negligence claim, Qin and Fu need to show 1) duty, 2) breach, 3) causation, and 4) damages. *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992). For wantonness, "the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some act or omitted some known duty." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994). "Proximate cause is an essential element of both negligence claims and wantonness claims." *Id.* (citations omitted). "Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." *Id*. Proximate cause is established when an ordinary prudent person would have reasonably foreseen the negligent or wanton act or omission causing the injury. *Peevy v. Ala. Power Co.*, 393 So. 2d 971, 973 (Ala. 1981). For the reasons stated below, Qin and Fu cannot establish their negligence or wantonness claims.

#### 1.  Qin and Fu's Increased Risk of Identity Theft Claim

In a nutshell, Qin and Fu contend that the mere sending of an unencrypted

email has exposed them to an increased risk of identity theft. Unfortunately for Qin and Fu, "without more than allegations of increased risk of future identity theft, they have not suffered harm that the law is prepared to remedy." *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 639–40 (7th Cir. 2007). Indeed, one of the bedrocks of Article III standing is an injury:

> First, the plaintiffs must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision.

*Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 883 (11th Cir. 2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks omitted)). Consistent with these principles, courts have found that an alleged increased risk of injury is insufficient to confer standing. *See e.g. Giordano v. Wachovia Sec., LLC*, Civ. No. 06-476 (JBS), 2006 WL 2177036, at *4–5 (D.N.J. July 31, 2006) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 97 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 493–97 (1974); *Luis v. Dennis*, 751 F.2d 604, 608 (3rd Cir. 1984)). Where, as here, the alleged negligent or wanton act creates only a mere possibility of injury occurring, and Qin and Fu have failed to demonstrate when and how Qin's information was stolen or the imminency of any identity theft related to the

unsecured email[1], their claims lack the certainty necessary to support standing. *See O'Shea v. Littleton*, 414 U.S. 488, 497 (1974); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 44 (3rd Cir. 2011) (finding standing when the potential harms from the increased risk are more "imminent" and "certainly impending"). Alternatively, the claims fail because Qin and Fu did not establish the causal link between Wells Fargo's conduct and the purported increased risk of identity theft. *See Martin*, 643 So. 2d at 567; *Peevy*, 393 So. 2d at 973. Therefore, summary judgment is due in favor of Wells Fargo on the increased risk of identity theft claims.

### 2.     Qin's Identity Theft Claim

To prevail on their negligence and wantonness claims for the theft of Qin's identity, *see* doc. 16 at 15, Qin and Fu must establish that Wells Fargo's alleged negligent and/or wanton acts or omission caused the identity theft. *See Martin,* 643 So. 2d at 567. Unfortunately for Qin and Fu, Alabama courts have consistently held that a plaintiff does not meet her burden of establishing proximate cause when there are multiple possible causes for the injury. For example, in *Shanklin v. New Pilgrim Towers, L.P.*, 58 So. 3d 1251 (Ala. Civ. App. 2010), after falling while entering the defendant's elevator, the plaintiff sued alleging that the defendant negligently allowed the elevator to be "misleveled." 58

---

[1] Qin and Fu admit they do not know who stole Qin's identity, when or how Qin's information was stolen, doc. 27-1 at 13, and that no one has stolen Fu's identity, doc. 27-7 at 18.

So. 3d at 1257. The court rejected the claim because, even though "[t]he evidence presented [could] support the conclusion that Shanklin tripped on the 'misleveled' elevator, [it] point[ed] just as equally to the conclusion that Shanklin simply stumbled or tripped for no apparent reason." *Id.* Consequently, the court rejected the claim because of the lack of causation. *Id.*

Qin and Fu's claims fail for similar reasons, i.e. they have not provided sufficient evidence indicating why their allegation that the unsecured email led to the theft of Qin's identity should prevail over other possible theories for the identity theft. For example, because the email at issue contained both Qin and Fu's personal information and yet only Qin has had her identity stolen, it is equally plausible that the thieves obtained Qin's personal information from sources other than the email. While normally courts must construe inferences in favor of the non-movant at the summary judgment stage, the court cannot do so here because "when evidence points equally to inferences that are favorable and to inferences that are unfavorable to the moving party [i.e. the party seeking the inference], the evidence lacks probative value; and the evidence may not be used to support one inference over another because such use is mere conjecture and speculation." *Shanklin,* 58 So. 3d at 1257 (quoting *Ex parte Harold L Martin Distrib. Co.*, 769 So. 2d 313, 315 (Ala. 2000)). Moreover, "'the jury will not be permitted to merely guess as between a number of causes, where there is no satisfactory foundation in

the testimony for the conclusion which they have reached.'" *Shanes v. Kiser*, 729 So. 2d 319, 321 (Ala. 1999) (quoting *Nat'l Life & Accident Ins. Co. v. Allen*, 234 So. 2d 567, 572 (Ala. 1970)). Therefore, Wells Fargo's motion for summary judgment on the negligence and wantonness identity theft claims is due to be granted because Qin and Fu have failed to present the court with sufficient evidence that Wells Fargo's actions caused their injury. *See Wilbanks v. United Refractories, Inc.*, 112 So. 3d 472, 473-75 (Ala. 2012) (negligence and wantonness claims fail in light of plaintiff's failure to prove causation); *see also Jones v. Commerce Bank, N.A.*, No. 06 Civ. 835(HB), 2007 WL 672091, at *1 (S.D.N.Y. Mar. 6, 2007) (granting summary judgment when the plaintiff failed to show, among other things, that the defendant's actions caused the identity theft).

In sum, Qin and Fu's motion for summary judgment is due to be denied, and Wells Fargo's motion on the negligence and wantonness claims is due to be granted because Qin and Fu fail to establish causation for their claims of actual identity theft and fail to establish standing for their claims of an increased risk of identity theft.

### B. Breach of Contract

In Counts III, IV and V, Qin and Fu assert several breach of contract claims. Doc. 16 at 19-23. To establish a breach of contract claim, a plaintiff must show, at a minimum, the existence of a valid contract. *See State Farm Fire & Cas. Co. v.*

*Slade*, 747 So. 2d 293, 303 (Ala. 1999). This entails an offer, acceptance, consideration, and mutual assent, i.e. a meeting of the minds, to the terms essential to the formation of the contract. *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009); *Air Conditioning Eng'rs v. Small*, 65 So. 2d 698, 703 (Ala. 1953); *Water Works & Sanitary Sewer Bd. of City of Montgomery v. Norman*, 208 So. 2d 788, 791 (Ala. 1968). For the reasons stated below, the court finds that Qin and Fu cannot establish their claims that Wells Fargo (1) breached an implied contract, causing an increased risk of identity theft (Count III), (2) breached an implied contract to avoid exposing their confidential information (Count IV), and (3) breached an express contract to encrypt transmission of their confidential information (Count V). Doc. 16 at 19–21.

### 1.     Implied Contract Claims - Counts III and IV

According to Qin and Fu, the parties had an implied contract to only send confidential information through secured emails, to encrypt outgoing emails containing personal and confidential information, and to avoid exposing Qin and Fu's personal and confidential information. Doc. 16 at 19–22. Proof of an implied contract requires the same basic elements of an express contract. *See Stacey v. Peed*, 142 So. 3d 529, 531 (Ala. 2013). "An implied contract arises where there are circumstances which, according to the ordinary course of dealing and common understanding, show a mutual intent to contract." *Broyles v. Brown Eng'g Co.*,

151 So. 2d 767, 770 (Ala. 1963); *see also First Alabama Bank of South Baldwin v. Prudential Life Ins. Co. of America*, 619 So. 2d 1313, 1318 (Ala. 1993). Unfortunately for Qin and Fu, their communications with Wells Fargo were limited to the creation of the loan, doc. 27-1 at 43, and do not expressly or implicitly discuss any of the alleged contractual terms Qin and Fu assert. Furthermore, in light of Qin's testimony that she lacked the necessary knowledge to encrypt an email and did not know the importance of encryption, doc. 27-1 at 7, 17, it follows that she cannot establish the mutual assent necessary for the formation of a contract on this issue. *See Shaffer*, 29 So. 3d at 880. Therefore, there was no meeting of the minds with regards to the encryption of the emails and consequently no implied contract.

### 2. Express Contract Claims - Count V

Qin and Fu's express contract claim focuses on Wells Fargo's email disclaimer: "This is an unsecured email service which is not intended for sending confidential or sensitive information. Please do not include your social security number, account number, or any other personal or financial information in the content of the email." Doc. 36 at 11–12. Qin and Fu argue that this prohibition against sending unsecured emails is an express contractual term that Wells Fargo breached. In making this contention, Qin and Fu ignore that under Alabama law, "to become a binding promise, the language used . . . must be specific enough to

constitute an actual offer rather than a mere general statement of policy." *Hoffman-LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 734 (Ala. 1987). The specificity is lacking in this case with respect to the disclaimer. As other courts have held, absent a showing that a plaintiff relied on a policy, *see Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, No. 09-4567 (RBK/KMW), 2010 WL 1799456, at *9 (D.N.J. May 4, 2010), "[b]road statements of company policy do not generally give rise to contract claims," *Dyer v. Nw. Airlines Corp.*, 334 F. Supp. 2d 1196, 1199–1200 (D.N.D. 2004). This is especially the case when, as here, the statement appears to be an automatic footer that is contained in every email communication the loan officer sent. *See* doc. 39 at 5. Moreover, Qin and Fu fail to allege in the complaint and fail to present any evidence that they relied on this language to their detriment. *See generally* doc. 16. They simply cannot make such a showing because they took no action in reliance on the policy. In fact, the alleged breach is contained in the very first email outlining the language that they claim created the express contract.

In sum, because Qin and Fu fail to present evidence to support the existence of a valid contract, express or implied, Wells Fargo's motion for summary judgment on the contract claims is due to be granted.

### C. Damages

Additionally, even if Qin and Fu somehow can establish that Wells Fargo

acted negligently or wantonly or breached a contract, their claims would still fail because Qin and Fu cannot prove they sustained any damages. *See Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992) ("The elements required for recovery under a negligence theory are: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury."); *Ex parte the Indus. Dev. Bd. of the City of Montgomery*, 42 So. 3d 699, 717-18 (Ala. 2010) ("To establish [a breach of contract] claim, the plaintiffs must prove (1) the existence of a valid contract; (2) a breach by the defendants; (3) the plaintiffs' own performance under the contract; and (4) damages"). In fact, Qin and Fu have not suffered any actual injuries. To the contrary, Qin successfully removed the fraudulent accounts from her credit reports, and closed the accounts without having to pay off any of the charges. *See* docs. 27-7 at 12; 27-1 at 21. Moreover, no financial institution has denied Qin or Fu a loan since the incident. Doc. 27-1 at 22–23. Rather, the only alleged injury here is the "increased risk of identity theft" and "the costs to monitor credit," doc. 36 at 16, which are speculative and are not the type of "damage" generally recognized under Alabama law.[2] *See Indus. Chem. and Fiberglass Corp. v. Chandler*, 547 So. 2d 812, 820 (Ala. 1988) ("Damages can be awarded only where they are reasonably certain and

---

[2] Other courts have rejected similar claims, finding that an increased risk of a future injury or the incurring of costs to monitor a credit report generally does not qualify as compensable damages. *See Krottner v. Starbucks Corp.*, No. C09–0216RAJ, 2009 WL 7382290, at *7 (W.D.Wash. Aug. 14, 2009); *see also Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1020–21 (D. Minn. 2006) (exception where the increased risk and purchasing of monitoring services are based on a present injury).

not based upon speculation"). This is especially the case where, as here, the plaintiff cannot prove that the injury is the result of the defendant's actions. *See Patrick v. Union State Bank*, 681 So. 2d 1364, 1369 (Ala. 1996).

Finally, as to Qin and Fu's contention that the time spent talking to "angry" creditors to clear Qin's name and the "insomnia, emotional distress, and mental anguish" that accompanied the increased risk of identity theft qualify as damages, doc. 40 at 10, the court notes that under Alabama law, "recovery for emotional distress is limited 'to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.'" *Gunn v. KFC U.S. Props., Inc.*, 85 So. 3d 454, 456 (Ala. Civ. App. 2011) (quoting *AALAR, Ltd., Inc. v. Francis*, 716 So. 2d 1141, 1147 (Ala. 1998)). Consequently, in the absence of an alleged physical injury or evidence of a risk of suffering physical injury, Qin and Fu have no basis for requesting damages for emotional distress. Accordingly, even if Qin and Fu could somehow establish the other elements of their claims, the absence of damages would doom their claims.

### IV. CONCLUSION

Based on the evidence before this court, there are no factual disputes and Qin and Fu have failed to provide sufficient evidence of causation, establish that they have standing on their negligence and wantonness claims, prove the existence

of a contract, and failed to demonstrate that they incurred actual damages. Therefore, Qin and Fu's motion is due to be denied and Wells Fargo's motion is due to be granted. The court will enter a separate order consistent with this opinion.

**Done** this 12th day of September, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE